UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

                    Plaintiff,                        Case No. 1:21-cv-54

v.                                                    Honorable Janet T. Neff

HEIDI E. WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The

events about which he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi E.

Washington, Office of Legal Affairs Administrator Jared Warner, Deputy Warden of Programs Unknown Blackman, Assistant Deputy Warden of Housing Unknown McBride, Warden Matt Macauley, and Hearings Administrator Richard Russell.

Plaintiff alleges that on March 29, 2020, Governor Whitmer issued an executive order addressing management of the COVID-19 pandemic by Michigan prisons.  On August 25, 2020, IBC received its first case of COVID-19 and all regular operations, including library services, were cancelled.  Plaintiff claims that this left level 2 prisoners without a way to obtain legal assistance, supplies, photocopying services, and other items necessary to ensure access to the courts.

Plaintiff alleges that he received a misconduct conviction for possession of tobacco in violation of his due process rights.  Plaintiff claims that the substance seized from him was not tested, which violated MDOC policy.  In addition, Plaintiff spoke to the officers who found the unknown substance in Plaintiff's locker during a cell search.  Both officers agreed that they did not know what the substance was, and that it was rolled up and still warm.  Plaintiff had not been in his cell for over two hours, but his cell mates were present during the search.  The officers agreed to write statements on Plaintiff's behalf and attested that they were told to write the misconduct on Plaintiff in retaliation for his prior complaint on second shift officer Kammers. Plaintiff was not reviewed on the misconduct within twenty-four hours in accordance with policy. Finally, Plaintiff claims that the Hearings Officer who conducted the hearing was biased against Plaintiff.  Despite all of the improprieties leading to Plaintiff's misconduct conviction, Defendant Russell denied Plaintiff's request for rehearing on August 26, 2020.

2

On August 26, 2020, Plaintiff told Prison Counselor (P.C.) Thompson that he had a court deadline of sixty days for requesting judicial review of the misconduct and that he needed legal assistance, supplies, photocopies, and postage.  P.C. Thompson stated that she would look into Plaintiff's request.  However, on August 27, 2020, P.C. Thompson told Plaintiff that Defendants Macauley, McBride, and Blackman had barred all prisoners from receiving legal supplies, photocopies, assistance, or access to the law library.  On August 29, 2020, Plaintiff spoke to P.C. Thompson and Resident Unit Manager Bolton, who attempted to find legal supplies for Plaintiff.  When they were unable to find supplies, Bolton contacted Defendants Blackman and McBride, who said "Sanders is not to receive any legal supplies, photocopies, legal assistance, nor use the prison library."  (ECF No. 1, PageID.10.)  Plaintiff wrote a kite to Defendant Macauley about his filing deadline and gave it to P.C. Thompson.  On August 30, 2020, P.C. Thompson told Plaintiff that, according to Defendant Macauley, he should kite Defendant Blackman.  Plaintiff kited Defendant Blackman, who responded that Plaintiff's request had been denied by Defendants McBride and Macauley.

On September 9, 2020, Plaintiff received an order from this Court denying his petition for habeas corpus relief due to the COVID-19 pandemic for failure to exhaust state court remedies.  Plaintiff was instructed that he must first file a motion for relief from judgment in the state court within twelve months of the order.  Plaintiff again attempted to get the necessary assistance to access the courts, to no avail.  Plaintiff filed a grievance regarding the denial.  On September 25, 2020, Defendants Blackman and McBride responded to the grievance by stating that Defendant Warner had sent out a memorandum on behalf of Defendant Washington, which

stated that because IBC was on COVID-19 outbreak status, Plaintiff would not be receiving access to the law library, legal assistance, supplies, or photocopies.

Subsequently, Plaintiff spoke to P.C. Thompson about his need for copies and Thompson responded by telling Plaintiff to give his documents to whoever made legal rounds on the next Monday, because she would not be at work that day.  On Monday, October 12, 2020, Plaintiff gave his documents to P.C. Uki, who said he would contact Defendant McBride to get approval to copy and process the documents.  On October 13, 2020, Plaintiff waited on P.C. Thompson to check on his legal documents.  At 10:30 a.m., another prisoner let Plaintiff out to process his mail, but when Officer Hall saw Plaintiff, he told him to go back to his cell.  Plaintiff attempted to speak to P.C. Thompson when she came out of her office, but Officers Hall and Cooley both ordered Plaintiff back to his cell.  Later that day, P.C. Thompson made legal mail rounds on Plaintiff's unit and spoke to Plaintiff, stating:

> Sanders, Richard Russell contacted Jared Warner and told him about your misconduct and appeal and your 1983 complaint against 2nd shift officer Kammers, Warner contacted Warden Macauley and told Macauley that you do not get access to any legal assistance, legal supplies, legal copies (access to courts), Macauley had McBride carry out this order for 'us' to deny you these things, I am only a Prison Counselor (P.C.), I have no control over their instructions, I do what I'm told to make a living and provide for my family, I would have told you sooner, but you would not have believed me until they denied your grievance.

(*Id.* at PageID.14.)  On October 25, 2020, the statute of limitations for Plaintiff's petition for judicial review expired.  Petitioner states that the statute of limitations on his habeas corpus expires on September 11, 2021.

Plaintiff claims that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

4

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

5

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.   **Access to courts**

Plaintiff claims that Defendants violated his First Amendment right of access to the courts because the restrictions placed on receiving legal supplies, photocopies, assistance, or access to the law library, resulted in the statute of limitations expiring on his ability to obtain judicial review of his misconduct conviction.  Plaintiff also asserts that he is afraid of running out of time to exhaust state court remedies on his habeas corpus petition.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824–25.  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words,

6

a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 415.

Initially, the Court notes that a petition for judicial review of a misconduct conviction is not an attack on the prisoner's conviction or sentence; nor is it a challenge to the

7

conditions of confinement.  *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also*
*Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (holding that the inability to appeal a
misconduct conviction does not amount to actual injury); *c.f. Thomas v. Eby*, 481 F.3d 434, 440
(6th Cir. 2007) (holding that a major misconduct conviction does not affect the duration of a
prisoner's sentence in Michigan for prisoners, like Petitioner, who were convicted after 1987).

        In addition, Plaintiff alleges that his deadline for exhausting his state court remedies
on his habeas corpus action is September 11, 2021, and at that time, he will be unable to pursue
habeas corpus relief related to his request to be released because of COVID-19.  However, Plaintiff
fails to allege that he is currently unable to pursue such relief.  Therefore, because Plaintiff fails to
allege that he has suffered an actual injury, his First Amendment claim is properly dismissed.

IV.    **Due process**

        Plaintiff claims that his Fifth and Fourteenth Amendment due process rights were
violated by Defendant Russell's denial of rehearing on his misconduct conviction for possession
of tobacco, as well as by his inability to challenge the conviction in state court.  The Fourteenth
Amendment protects an individual from deprivation of life, liberty or property, without due
process of law."  *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a
Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these
interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due
process claim involves two steps:  "[T]he first asks whether there exists a liberty or property
interest which has been interfered with by the State; the second examines whether the procedures
attendant upon that deprivation were constitutionally sufficient . . . ."  *Ky. Dep't of Corr. v.*
*Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff fails to allege that his misconduct charge and conviction implicate an interest that falls into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence.  A prisoner like Plaintiff, who is serving indeterminate sentences for offenses enumerated in Mich. Comp. Laws § 800.34(a)(iii), committed on or after December 15, 1998, or for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.[1]  *See* Mich. Comp. Laws § 800.34.  Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole.  *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be

---

[1] According to the MDOC Offender Tracking Information System, Plaintiff is currently serving indeterminate sentences for a crime committed on March 17, 2008, as well as for crimes committed in 1999 and 2000 in violation of Mich. Comp. Laws §§ 750.529 and 750.110a, which are enumerated in Mich. Comp. Laws § 800.34(a)(iii). https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=305405.

presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." In fact, Plaintiff fails to allege any facts with regard to the consequences he suffered as a result of the misconduct. Assuming that Plaintiff was placed in administrative segregation, the Court notes that confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and

10

significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

The same is true for the loss of yard and phone privileges, the loss of prison employment, and the loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation.  Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment.  *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)).  As noted above, Plaintiff

fails to allege any adverse consequences from his misconduct conviction.   However, even if Plaintiff did suffer placement in administrative segregation, a loss of privileges, or loss of a prison job, they would not implicate his right to due process.

V.      **Eighth Amendment**

Plaintiff makes a conclusory assertion that Defendants violated his Eighth Amendment rights.   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."   *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."   *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.   "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."   *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate

12

indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.  Because Plaintiff has failed to allege facts showing that he was subjected to a substantial risk to inmate health or safety, his Eighth Amendment claim is properly dismissed.

## VI.     **Pending motion for appointment of counsel**

Plaintiff has filed a motion for the appointment of counsel (ECF No. 3).  However, because Plaintiff's complaint fails to state a claim, his motion is properly denied as moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that

any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:  ___March 19, 2021___            ___/s/ Janet T. Neff___
                                                        Janet T. Neff
                                                        United States District Judge